IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MWCB ROCK ROAD, LLC,

Plaintiff,

v.

C&W FACILITY SERVICES INC.,

Defendant/Third-Party Plaintiff,

v.

NETAPP, INC., and CROSSLAND CONSTRUCTION, INC.,

Third-party Defendants.

Case No. 6:21-CV-01022-SAC-GEB

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Third-Party defendant Crossland Construction, Inc. ("Crossland") respectfully moves this Court for an order dismissing the claims raised against it as a matter of law.

## I. INTRODUCTION

The claim of plaintiff, MWCB Rock Road, LLC ("MWCB"), arose from the unauthorized removal and sale of copper wiring taken from the premises located at 3718 N. Rock Road, Wichita, Kansas 67226 ("3718 Rock Road"). C&W Facility Services, Inc.'s ("C&W") employees removed wiring and sold it local scrap metal facilities. C&W claims that these actions were authorized either by NetApp, Inc. or Crossland. C&W has filed a third-party complaint against Crossland alleging that C&W is entitled to implied indemnity in the event C&W becomes liable to MWCB. C&W also argues that it is entitled to comparative implied indemnity and that liability should be

apportioned between MWCB, C&W, NetApp, and Crossland depending on their relative degree or fault.

Crossland moves to dismiss the third-party complaint because it fails to establish a plausible claim as a matter of law. The third-party complaint relies on conclusory allegations and is devoid of any factual allegations that make the implied indemnity claim plausible under the rules announced in *Ashcroft v Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Furthermore, Crossland is accused of no independent tort that would support a claim for implied indemnity and the claim fails as a matter of law.

## II. STATEMENT OF FACTS AS ALLEGED BY C&W

The First Amended Third-Party Complaint sets forth the following allegations which have been included based on their relevance to the claims asserted against Crossland. While many of the allegations are factually incorrect and will be denied or further responded to at the appropriate time, as to this motion to dismiss, the court must accept well pled facts in First Amended Third-Party Complaint as true. However, the court can reject conclusory allegations that are unsupported by facts or inferences.

1. On information and belief, third-party defendant Crossland is a Kansas corporation with its principal place of business located in Kansas. [Exhibit A, C&W Facility Services First Amended Third-Party Complaint, ¶ 3].

2. The Court has personal jurisdiction over NetApp and Crossland because both reside, own property, conduct substantial and continuous business operations, and committed tortious acts against C&W Services in this judicial district. [Exhibit A, C&W Facility Services First Amended Third-Party Complaint, ¶ 7].

3. Venue is proper under 28 U.S.C. § 1391 because NetApp and Crossland reside in this judicial district and a substantial portion of the events giving rise to C&W Services' causes of action occurred here. [Exhibit A, C&W Facility Services First Amended Third-Party Complaint, ¶ 8].

4. At some point during C&W Services' engagement under the NetApp Agreement, NetApp sold 3718 Rock Road to MWCB. In turn, MWCB engaged Crossland to serve as its contractor and perform work at 3718 Rock Road on its behalf. [Exhibit A, C&W Facility Services First Amended Third-Party Complaint, ¶ 15].

5. In or around January 2020, NetApp verbally directed staff of C&W Services to perform certain services to assist with the transition of 3718 Rock Road from NetApp to MWCB, including to perform various work at the direction of Crossland as NetApp vacated a portion of the facility. [Exhibit A, C&W Facility Services First Amended Third-Party Complaint, ¶ 16].

6. On information and belief, beginning in February or March 2020 and at the verbal direction of NetApp and Crossland, C&W Services' staff did certain work as instructed by NetApp and Crossland to help Crossland dismantle and remove electrical equipment, conduits, and/or wire from labs located at the facility. Among the work performed in accordance with the verbal direction of NetApp and Crossland, Crossland personnel directed C&W Services' staff to assist Crossland in clearing materials from Labs A and C at 3718 Rock Road. Crossland personnel also authorized the removal of that material from 3718 Rock Road for recycling. [Exhibit A, C&W Facility Services First Amended Third-Party Complaint, ¶ 19].

7. At all times, C&W Services' staff acted at the direction and in the presence of NetApp and Crossland at 3718 Rock Road, and reasonably believed that the work they performed

at NetApp's and Crossland's direction was authorized by the facility's owner, MWCB. [Exhibit A, C&W Facility Services First Amended Third-Party Complaint, ¶ 20].

8. On February 19, 2021, MWCB filed its Second Amended Complaint (Doc. 9). In it, MWCB alleges that employees of C&W Services "stripped wiring from equipment and from the electrical service to the building and from electrical panels in the data center and labs located at" 3718 Rock Road without MWCB' s authorization, damaging the facility. Doc. 9 at 2. MWCB further alleges that C&W Services employees "sold the materials as scrap and . . . retained the proceeds from the sale." Doc. 9 at 3. Based on those allegations, MWCB asserts two tort claims against C&W Services—one for negligent supervision (Count I) and another alleging conversion (Count II). [Exhibit A, C&W Facility Services First Amended Third-Party Complaint, ¶ 21].

9. At all times, the work performed by C&W Services' staff at 3718 Rock Road was conducted with NetApp's and Crossland's knowledge, authorization, and consent, in NetApp's and Crossland's presence, at NetApp's and Crossland's direction, and under NetApp's and Crossland's supervision. [Exhibit A, C&W Facility Services First Amended Third-Party Complaint, ¶ 24].

10. In addition, at all times, C&W Services' staff reasonably believed that work was authorized by NetApp, Crossland, and the facility's owner, MWCB. [Exhibit A, C&W Facility Services First Amended Third-Party Complaint, ¶ 25].

11. In the alternative, if C&W Services is adjudged to be or becomes liable to MWCB for any damages alleged, then C&W Services is entitled to comparative implied indemnity from NetApp and/or any damages awarded to MWCB should be apportioned between MWCB, C&W Services, NetApp, Crossland, and any others according to their relative degree of fault, if any. Indeed, on MWCB's claims, the fault of NetApp must be compared to reduce or bar any damages

awarded to MWCB and against C&W Services. [Exhibit A, C&W Facility Services First Amended Third-Party Complaint, ¶ 29].

12. The work performed by C&W Services' staff at 3718 Rock Road was directed by NetApp via written work orders and verbal instruction and by Crossland via verbal instruction. [Exhibit A, C&W Facility Services First Amended Third-Party Complaint, ¶ 31].

13. At all times, the work performed by C&W Services' staff at 3718 Rock Road was conducted with NetApp's and Crossland's knowledge, authorization, and consent, in NetApp's and Crossland's presence, at NetApp's and Crossland's direction, and under NetApp's and Crossland's supervision. [Exhibit A, C&W Facility Services First Amended Third-Party Complaint, ¶ 32].

14. In addition, at all times, C&W Services' staff reasonably believed that work was authorized by NetApp, Crossland, and the facility's owner, MWCB. [Exhibit A, C&W Facility Services First Amended Third-Party Complaint, ¶ 33].

15. On information and belief, if MWCB's allegations that wiring and electrical equipment was removed from 3718 Rock Road and recycled without its consent are true (which C&W Services does not admit), then Crossland, without C&W Services' knowledge, tortiously directed C&W Services' staff to remove materials and perform unauthorized work at the facility. [Exhibit A, C&W Facility Services First Amended Third-Party Complaint, ¶ 34].

16. C&W Services is completely without fault and denies any liability to MWCB for the tort claims it has advanced in the Second Amended Complaint. [Exhibit A, C&W Facility Services First Amended Third-Party Complaint, ¶ 35].

17. If, however, C&W Services is adjudged to be or becomes liable to MWCB for any damages alleged, then C&W Services is entitled to implied contractual indemnity from Crossland

because Crossland and its agents' tortious acts, omissions, and/or negligence in directing C&W Services were the sole and/or proximate cause of MWCB's damages. [Exhibit A, C&W Facility Services First Amended Third-Party Complaint, ¶ 36].

18. In the alternative, if C&W Services is adjudged to be or becomes liable to MWCB for any damages alleged, then C&W Services is entitled to comparative implied indemnity from Crossland and/or any damages awarded to MWCB should be apportioned between MWCB, C&W Services, NetApp, Crossland, and any others according to their relative degree of fault, if any. Indeed, on MWCB's claims, the fault of Crossland must be compared to reduce or bar any damages awarded to MWCB and against C&W Services. [Exhibit A, C&W Facility Services First Amended Third-Party Complaint, ¶ 37].

## III. LEGAL ARGUMENT AND AUTHORITIES

### A. Motion to Dismiss Standard

To survive a motion to dismiss, a complaint must contain enough allegation of fact, taken as true to state a claim to relief that is plausible on its face. *Al-Owhall v. Holder*, 687 F.3d 1236, 1239 (10th Cir. 2012). The factual information offered in support of the complaint must raise the right to relief above the speculative level. *Kansas Penn Gaming LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

The plausibility standard asks for more than the sheer possibility that a defendant has acted unlawfully. *Ashcroft v Iqbal*, 556 U.S. 662, 678 (2009). A court is empowered to "disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kansas Penn Gaming, LLC*, 656 F.3d at 1214. Naked assertions that are devoid of further factual enhancement do not satisfy the plausibility requirement. *Iqbal*, 556 U.S. at 678.

Plausibility refers to "The scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible." *Robbins v. Oklahoma ex rel. Dep't of Human Servs.*,519 F.3d 1242, 1247 (10th Cir. 2008).

The plausibility standard serves two purposes: "'to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense,' and 'to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of 'a largely groundless claim.'" Kansas Penn Gaming, 656 F.3d at 1215.

Two working principles underlie *Twombly:* "first, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements," and second, "determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense."

District courts have the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Where the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

**B. The Third-Party Complaint Fails to Establish a Plausible claim**

This Court's analysis starts with considering the elements of an implied indemnity claim. *See Iqbal*, 556 U.S. at 675 ("Here too we begin by taking not of the elements a plaintiff must plead to state a claim of unconstitutional discrimination…"). There are two types of indemnity recognized in Kansas:

> The first occurs where there is an expressed contract of indemnity, such as a "hold harmless" agreement. The second occurs where a contract of indemnity may be implied when one is compelled to pay what another party ought to pay. The implied or constructive liability usually arises when one personally, without fault, is made to pay for a tortious act of another. The person paying has a right of action against the person at fault.

*Fleming Companies, Inc. v. GAB Business Service, Inc.*, 103 F. Supp.2d 1271, 1275 (D. Kan. 2000) (Citing *Haysville U.S.D. No. 261 v. GAF Corp.*, 233 Kan. 635 (1983). In Kansas, an indemnitee may only be implicitly indemnified when it is completely without fault. *Med James, Inc. v. Barnes*, 31 Kan. App. 2d 89 (Kan. Ct. App. 2003); *Nolde v. Hamm Asphalt*, 202 F. Supp. 2d 1257, 1271 (D. Kan. 2002).

C&W alleges that it is entitled to comparative implied indemnity. Comparative implied indemnity is an equitable remedy available to a single defendant amongst a number of tortfeasors, who by settling with plaintiff or paying a judgment, pays the other tortfeasors' share of liability. *Schaefer v. Horizon Building Corp.*, 26 Kan. App. 401, 403, 985 P.2d 723 (1999). Because Kansas has adopted comparative fault, the traditional concept of indemnification based on the dichotomy of active/passive negligence is no longer recognized in Kansas. *Nolde v. Hamm Asphalt*, 202 F. Supp. 2d 1257, 1266 (D. Kan. 2002). Claims of indemnification based on an imbalance of the party's proportionate fault are contrary to Kansas law. *Id.*

After the elements of a claim have been established, the court should turn to the well pleaded facts of the complaint to determine if it meets the plausibility standard. C&W sets out its allegations that Crossland acted tortious in paragraphs 34 and 36 of its petition. C&W states without elaboration that Crossland tortiously directed C&W staff to remove materials and perform unauthorized work at the facility. C&W states that if it is held liable, it is entitled to implied contractual indemnity because of Crossland and its agents' tortious acts, omissions, and/or

negligence in directing C&W's services were the sole and/or proximate cause of MWCB's damages. To the extent that C&W's argument relies on Crossland's direction being the proximate cause of MWCB's damages, proximate cause is an outdated concept and no longer used within the comparative fault framework. *Nolde v. Hamm*, 202 F. Supp. 2d 1257, 1264 (D Kan. 2002).

These conclusory statements found in paragraphs 34 and 36 of C&W's Third-party complaint rely on information which is pled on information and belief in paragraph 19. C&W alleges that at the verbal direction of both NetApp and Crossland, its staff did certain work as instructed by NetApp and Crossland, to help Crossland dismantle and remove electrical equipment, conduits, and/or wire from labs located in the facility. Paragraph 19 continues that among the work performed include clearing materials from labs A and C at 3718 Rock Road and that Crossland directed and authorized the removal of the material from 3718 Rock Road for recycling. These allegations are plead on information and belief.

Facts may be alleged on information and belief in two situations: "(1) where the *facts* are peculiarly within the possession and control of the defendant; or (2) where the belief is based on *factual information* that makes the inference of culpability plausible." *Lee v. U.S. Bank N.A. (In re Lee)*, 2019 Bankr. LEXIS 3472, *3, 2019 WL 5849059 (Kan. Bnkr. 2019).

The present case is not a situation where the facts are peculiarly within Crossland's control. Neither is this a situation where the belief in paragraph 19 is based on factual information that makes an inference of culpability plausible. If that were the case, C&W would simply plead the factual information supporting its indemnity claim. C&W does not explicitly plead that its employees were told to remove the wiring at issue in the Complaint filed by MWCB. Paragraph 19 is the only paragraph that comes close to alleging such conduct and it does so based on information and belief. These allegations are conclusory and not a situation where pleading on

information and belief is allowed. Without the allegations of paragraph 19, 34, or 36, C&W's Third-party complaint fails to state a plausible claim against Crossland.

C&W is not entitled to comparative implied indemnity because that claim is based on the traditional concept of active/passive negligence which is no longer recognized in Kansas. *See Nolde v. Hamm Asphalt*, 202 F. Supp. 2d at 1266. C&W attempts to use the indemnity claim to apportion liability. Importantly, when C&W moved to add Crossland as a third-party defendant and state its claims, it failed to raise negligence as a claim. Crossland is not a joint tortfeasor for the purposes of implied indemnity and C&W's claim fails as a matter of law.

**C. C&W's Conclusory Allegations Should be Rejected**

The allegations of the complaint are central to this consideration. C&W alleges that NetApp verbally directed C&W staff to perform various work at the direction of Crossland. C&W alleges that the directions from Crossland were verbal. C&W alleges based on information and belief that its staff were verbally directed by NetApp and Crossland to help Crossland dismantle and remove electric equipment, conduits, and/or wire from labs located at the facility. C&W alleges based on information and belief that Crossland personnel authorized the removal of material from3718 Rock Road for recycling. C&W alleges based on information and belief that Crossland directed C&W staff to assist in clearing materials from Lab A and C at 3718 Rock Road. C&W alleges that its staff acted at the direction and in the presence of NetApp and Crossland and reasonably believed that the work they performed at NetApp's and Crossland's direction was authorized by the facility's owner, MWCB.

C&W alleges that at all time the work was performed with NetApp's and Crossland's knowledge, authorization, and consent, in NetApp's and Crossland's presence, at NetApp's and Crossland's direction, and under NetApp's and Crossland's supervision. C&W alleges in addition

that its staff reasonably believed the work was authorized by NetApp, Crossland, and the facility's owner, MWCB.

C&W alleges based on information and belief that if MWCB's allegations are true, then Crossland tortiously directed C&W Staff to remove materials and perform unauthorized work at the facility. C&W alleges it is without fault and denies liability. C&W claims it is entitled to implied contractual indemnity because Crossland and its agents' tortious acts, omissions, and/or negligence in directing C&W is the sole and proximate cause of MWCB's damages. Alternatively, C&W alleges it is entitled to comparative indemnity to apportion liability between MWCB, C&W Services, NetApp, and Crossland.

C&W does little more than use conclusory allegations that Crossland acted tortiously and with negligence in causing MWCB's damages. C&W does not allege the existence of any duty owed by Crossland nor any breach of that duty by Crossland. There is no tort claim raised against Crossland in C&W's petition. Calling an action tortious does not make it so and such conclusory language should be rejected by this Court as failing to satisfy the plausibility standard.

**D. C&W Alleges No Tort on Behalf of Crossland**

There can be no implied indemnity claim without an underlying tort or tortious act. *See Fleming Companies, Inc. v. GAB Business Services, Inc.*, 103 F. Supp. 2d at 1276 (allowing implied indemnity claim to proceed because it was supported by tortious act of misrepresentation). In the present case, the only claim raised against Crossland is a single count of implied indemnity. C&W does not allege any independent tort against Crossland.

Crossland agrees with NetApp's analysis that there is no basis for the application of comparative indemnity in this case. Crossland is not a joint tortfeasor as required for implied indemnity to apply. If C&W is successful in its argument that the work was approved by NetApp

or Crossland, then there will be no liability for any party. There is no claim raised against NetApp or Crossland in that regard. Stated another way, if C&W is not held liable because the work was approved, there is no comparative fault to allocate.

This is where C&W's claim for implied indemnity becomes nonsensical. If C&W is held liable for its employee's actions, then it follows that the work was not approved by Crossland. If however, C&W succeeds in its argument that the work was approved by Crossland, there is no liability. There is no situation where implied indemnity would be a viable claim unless the work was approved and directed by Crossland. The result of this is a situation where Crossland would never be held liable under the theory alleged. C&W fails to state a claim for which relief can be granted and its implied indemnity claim should be dismissed as a matter of law.

C&W's claims are better raised as the affirmative defenses of estoppel, license, release, or waiver. These issues could be addressed without Crossland ever being added a party to this lawsuit and having to comply with the initial disclosure and discovery obligations. There is no basis to hold Crossland liable under implied indemnity because it is not a joint tortfeasor. *See Schaefer v. Horizon Building Corp.*, 26 Kan. App.2d 401, 403, 985 P.2d 723 (1999) ("Comparative implied indemnity is an equitable remedy available to a single defendant, among a number of *tortfeasors*, who by settling with plaintiff or paying a judgment, pays the other tort-feasors' share of liability.") (Emphasis added).

## IV. Conclusion

For the reasons set forth above, Third-party Defendant Crossland respectfully requests that its Motion to Dismiss be granted and an order issue by this court granting the dismissal and for such other relief as the court deems just and proper.

Respectfully submitted,

MORRIS, LAING, EVANS, BROCK
& KENNEDY, CHARTERED

By /s/ Jeffery L. Carmichael
Jeffery L. Carmichael, #11085
Benjamin K. Carmichael, #27197
300 N. Mead, Suite 200
Wichita, Kansas 67202-2745
Telephone: (316) 262-2671
Email: jcarmichael@morrislaing.com
bcarmichael@morrislaing.com
*Attorneys for Plaintiff and Third-Party Defendant Crossland Construction, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of November, 2021, I electronically filed the foregoing **Memorandum in Support of Motion to Dismiss** with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to all counsel who have registered for receipt of documents filed in this matter.

/s/ Jeffery L. Carmichael
Jeffery L. Carmichael