## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| MWCB ROCK ROAD, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 21-1022-SAC-GEB |
| | ) | |
| C&W FACILITY SERVICES INC., | ) | |
| | ) | |
| Defendant/Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NETAPP, INC.,[1] | ) | |
| | ) | |
| Third-Party Defendant. | ) | |
| _____ | ) | |

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on Defendant/Third-party Plaintiff C&W Facility Services Inc.'s Motion for Leave to Amend its Third-Party Complaint (**ECF No. 45**). On October 27, 2021, the Court conducted a status and motion hearing. During the hearing, the Court **GRANTED** Defendant's motion, modified the current schedule, and entered informal discovery orders. (Order, ECF No. 51.) This written order memorializes the Court's findings at the hearing on the motion for leave to amend, and enters orders related to documents contained on C&W Services' privilege log and withheld from production.

---

[1] Since the October 27, 2021 hearing memorialized in this order, the First Amended Third-Party Complaint was filed (ECF No. 52), adding Crossland Construction Company, Inc. as an additional Third-Party Defendant.

## I.     Background[2]

This lawsuit arises from a property damage dispute. Plaintiff MWCB Rock Road, LLC purchased property located at 3718 N. Rock Road, Wichita, Kansas from third-party defendant NetApp, Inc. Prior to the sale, NetApp hired defendant C&W Facility Services, Inc. ("C&W Services") to assist in its preparations to move to a new location. After the sale to MWCB, employees of C&W Services continued to work onsite. MWCB alleges employees of C&W Services removed copper wiring without authorization and damaged equipment located at the property, causing significant damages. MWCB claims one C&W Services' employee took the copper to a recycling company and sold it for scrap, and the C&W Services' employees retained the money. MWCB filed this lawsuit against C&W Services for negligent supervision and conversion based on the alleged actions of C&W Service's employees.

C&W Services filed a third-party complaint (ECF No. 16) against NetApp for implied indemnity. C&W Services contends that, if MWCB's allegations are true, then C&W Services is entitled to implied contractual indemnity and/or comparative implied indemnity from NetApp, because C&W Services' employees acted at the direction of NetApp and its agents.

---

[2] Unless otherwise indicated, the information recited in this section is taken from the following: Complaint (ECF No. 1); Amended Complaint (ECF No. 3); Second Amended Complaint (ECF No. 9); Answer (ECF No. 23); Third Party Complaint (ECF No. 16); Answer to Third Party Complaint and Counterclaim (ECF No. 22); Answer to NetApp's Counterclaim (ECF No. 34); the parties' Planning Report (not filed; maintained in Chambers file); the briefing surrounding the pending motion (ECF Nos. 45-47); and the Proposed First Amended Third-Party Complaint (ECF No. 45-1.) This background information should not be construed as judicial findings or factual determinations.

Because NetApp denies authorizing or ratifying the conduct of C&W Services' employees, it filed a counterclaim against C&W Services for breach of contract and indemnity, based upon its contract with C&W Services. (ECF No. 22.)

A Phase I Scheduling Order was entered on July 7, 2021 to allow the parties time to gather discovery to conduct a meaningful mediation. (ECF No. 36). In that Phase I Scheduling Order, the deadline to file a motion to amend the pleadings was set for August 25, 2021. (*Id*. at 3.) Defendant C&W Services timely filed a motion for leave to amend its Third-Party Complaint on the date noted in the Scheduling Order.

After informal communication from the parties seeking the Court's consultation on a pre-motion discovery dispute, the undersigned held a conference on October 27, 2021. During that conference, the Court discussed with counsel the pending motion for leave to amend, extended the mediation discovery deadlines, and entered various discovery orders. (*See* Order, ECF No. 51.)

## II.   Defendant/Third-Party Plaintiff C&W Services' Motion for Leave to Amend its Third-Party Complaint (ECF No. 45)

Defendant C&W Services seeks leave to amend its Third-Party Complaint to add Crossland Construction Company, Inc. ("Crossland") as an additional third-party defendant to assert a separate claim for implied indemnity against it. (Motion, ECF No. 45.) C&W Services contends Crossland functioned as MWCB's contractor during the relevant time period, and Crossland may have actually directed C&W Services' employees to act. (*Id*. at 2.)

### A.    Legal Standards

C&W Services' request for leave to amend its complaint to add a third-party defendant is governed by two primary standards, found in Fed. R. Civ. P. 14 and 15.

### 1.    Fed. R. Civ. P. 15

The standard for permitting a party to amend his or her pleadings is well established. A party may amend its pleading as a matter of course under Fed. R. Civ. P. 15(a)(1), either before the responding party answers or within 21 days after service of a responsive pleading. However, in cases such as this where the time to amend as a matter of course has passed, without the opposing party's consent a party may amend its pleading only by leave of the court under Rule 15(a)(2).

Rule 15(a)(2) provides leave "shall be freely given when justice so requires," and the decision to allow an amendment is within the sound discretion of the court.[3] The court considers a number of factors in deciding whether to allow an amendment, including timeliness, prejudice to the other party, bad faith, and futility of amendment.[4] In exercising its discretion, the court must be "mindful of the spirit of the federal rules of civil procedure to encourage decisions on the merits rather than on mere technicalities."[5] The Tenth Circuit Court of Appeals acknowledged that Rule 15 is intended "to provide litigants 'the

---

[3] *See J. Vangel Elec., Inc. v. Sugar Creek Packing Co.*, No. 11–2112–EFM, 2012 WL 5995283, at *2 (D. Kan. Nov. 30, 2012) (citing *Panis v. Mission Hills Bank*, 60 F.3d 1486, 1494 (10th Cir. 1995)).

[4] *Minter v. Prime Equip. Co*., 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Monge v. St. Francis Health Ctr., Inc*., No. 12–2269–EFM-JPO, 2013 WL 328957, at *2 (D. Kan. Jan. 10, 2013), *report and recommendation adopted*, 2013 WL 328986 (D. Kan. Jan. 29, 2013).

[5] *Hinkle v. Mid-Continent Cas. Co*., No. 11–2652–JTM-KMH, 2012 WL 2581000, at *1 (D. Kan. July 3, 2012) (citing *Koch v. Koch Indus.*, 127 F.R.D. 206, 209 (D. Kan. 1989)).

maximum opportunity for each claim to be decided on its merits rather than on procedural niceties,'"[6] especially in the absence of bad faith by an offending party or prejudice to a non-moving party.[7]

### 2.    Fed. R. Civ. P. 14

Rule 14(a) of the Federal Rules of Civil Procedure governs when a defendant may file a third-party complaint.  A defendant must obtain leave of court to file a "third-party complaint more than 14 days after serving its original answer."[8]

Whether to grant or deny leave to file a third-party complaint is a matter within the sound discretion of the Court.[9] But because Rule 14 is intended to reduce the multiplicity of litigation, courts construe it liberally.[10] Unless the filing will prejudice another party, courts should generally allow the filing "of a proper third-party action."[11]  The rule, however, does not permit indiscriminate filing of all third-party complaints—it only permits a defending party to file a third-party complaint against "a nonparty who is or may be liable to [the defending party] for all or part of the claim against [the defending party]."[12]

Defendants typically invoke Rule 14(a) in two situations: (1) where a tortfeasor is

---

[6] *Carefusion 213,* 2010 WL 4004874, at *4 (citing *Minter,* 451 F.3d at 1204) (quoting *Hardin v. Manitowoc–Forsythe Corp.,* 691 F.2d 449, 456 (10th Cir. 1982)).
[7] *See AK Steel Corp. v. PAC Operating Ltd. P'ship*, No. 15-9260-CM-GEB, 2016 WL 6163832, at *4 (D. Kan. Oct. 24, 2016) (collecting cases; internal citations omitted).
[8] Fed. R. Civ. P. 14(a)(1).
[9] *AK Steel Corp. v. PAC Operating Ltd. P'ship*, No. 15-9260-CM-GEB, 2016 WL 6163832, at *4 (D. Kan. Oct. 24, 2016).
[10] *Lansing Trade Grp., LLC v. OceanConnect, LLC*, No. 12-2090-JTM-GLR, 2013 WL 120158, at *1 (D. Kan. Jan. 9, 2013).
[11] *Id.* (quoting *Clark v. Assocs. Commercial Corp.*, 149 F.R.D. 629, 635 (D. Kan. 1993)).
[12] *Id.* (quoting Fed. R. Civ. P. 14(a)(1)).

seeking contribution from a joint tortfeasor, and (2) where an insured is pursuing indemnification.[13] Although the rule may be invoked in other situations, secondary or derivative liability on the part of the proposed third-party defendant is central to properly invoking Rule 14.[14]

Whether to allow filing of a third-party complaint under Fed. R. Civ. P. 14 is "a matter within the sound discretion of the Court."[15] When exercising this discretion, some of the relevant factors considered by the court include:

> (1) the benefits of a single action versus prejudice to the other party and confusion, (2) the timeliness of the request and prejudice to the plaintiff in delay, (3) whether the main case would unnecessarily expand in scope, (4) whether impleading new parties would unduly delay or complicate the trial, and (5) whether the third-party plaintiff's motion states sufficient grounds for the court to evaluate the propriety of third-party complaints.[16]

## B.     Parties' Positions

C&W Services claims information gained to date reveals Crossland personnel working at the premises "directed and authorized C&W Services staff to perform work and remove material referred to and placed at issue in" Plaintiff's Second Amended Complaint. (Motion, ECF No. 45 at 2.) Although C&W Services contends Crossland is a member of MWCB and functioned as MWCB's contractor at the subject property, for purposes of this action, MWCB will neither accept that Crossland was its agent nor acted and/or directed

---

[13] *AK Steel Corp.*, 2016 WL 6163832, at *3.

[14] *Lansing Trade Grp., LLC,* 2013 WL 120158, at *2.

[15] *Id*. at *1-*2 (citing *Willard,* 216 F.R.D. at 514; *Clark v. Assocs. Commercial Corp.,* 149 F.R.D. 629, 635 (D. Kan. 1993); s*ee also First Nat'l Bank of Nocona v. Duncan Sav. & Loan Ass'n*, 957 F.2d 775, 777 (10th Cir. 1992).

[16] *Willard*, 216 F.R.D. at 514 (D. Kan. 2003) (citing *City of Wichita, Ks. v. Aero Holdings, Inc.*, No. 98-1360-MLB-KMH, 2000 WL 1480490, at *1 (D. Kan. Apr. 7, 2000)).

others at the subject location on MWCB's behalf. (Motion, ECF No. 45 at 2.) MWCB does not respond to or address this contention.

The only party opposing amendment is current Plaintiff MWCB, who is not a party to the proposed amended third-party complaint. The current third-party defendant, NetApp, did not respond to the motion, and therefore has no formal opposition.

C&W Services argues its motion was timely filed pursuant to the Scheduling Order, it is sought for a proper purpose, and is supported by the record. (Reply, ECF No. 47 at 1.) It maintains information produced through discovery, including notes from interviews with its employees, support its claim that NetApp and Crossland personnel directed C&W Services' work. (*Id.* at 4.)

MWCB sets forth two arguments against the addition of Crossland: such a claim is premature and futile, and C&W Services' attempt to add Crossland to the case is pursued in bad faith. (Resp., ECF No. 46.) MWCB contends C&W Services is relying on information regarding Crossland's participation, yet at the same time, refuses to produce such information through discovery. MWCB argues "the refusal of C&W to participate in good faith in the exchange of information . . . is the [bad faith] conduct complained [of] and the basis for the opposition to the pending motion." (*Id.* at 2-3.)

## C.    Discussion

The Court first considers Plaintiffs' motion on the Rule 15 analysis by addressing the following factors: timeliness, prejudice to the other party, bad faith, and futility. Additionally, a brief review of Rule 14 is also prudent.

### 1.    Timeliness

MWCB offers no argument regarding timeliness, and as noted above, C&W Services filed its motion on the deadline established in the Phase I Scheduling Order. Therefore, the motion is considered timely.

### 2.    Bad Faith

For the party opposing amendment to succeed on a claim of bad faith amendment, "[t]he movant's bad faith must be apparent from evidence of record," such as awareness of facts and failure to include them in the original complaint.[17] "Bad faith" is defined as "dishonesty of belief, purpose or motive."[18]

MWCB blames what it considers "abusive behavior during discovery" by C&W Services as the bad faith behind the request to amend. Summarily, C&W Services undertook its own investigation of the incidents before the lawsuit was filed and is now claiming the investigation materials are privileged. (*See* discussion *infra* Part III.) However, under these circumstances the Court does not find this bona fide discovery dispute satisfies the bad faith standard for opposing amendment. Having had the opportunity to review the parties' pre-conference statements,[19] hear counsel's arguments during the October 27 conference, and review the documents submitted by C&W Services for in camera inspection, the Court finds this was a well-reasoned dispute and does not support a finding of bad faith.

---

[17] *See Koch*, 127 F.R.D. at 211 (internal citations omitted).

[18] "Bad Faith," Black's Law Dictionary (11th ed. 2019).

[19] The parties' pre-conference submissions were emailed to the undersigned U.S. Magistrate Judge on October 22, 2021 and are maintained in the Chambers file.

### 3.     Undue Prejudice

As the party opposing the amendment, MWCB bears the burden to demonstrate undue prejudice within the meaning of Rule 15.[20] Under Rule 15, "undue prejudice" means "undue difficulty in prosecuting or defending a lawsuit as a result of a change of tactics or theories on the part of the movant."[21] While any amendment invariably causes some "practical prejudice," undue prejudice means the amendment "would work an injustice to" MWCB.[22]

Considering this "most important factor,"[23] the Court finds MWCB does not demonstrate prejudice sufficient to prohibit the proposed amendment. In fact, MWCB presents no prejudice argument, aside from suggesting during the hearing the matter may not be ready for mediation if a new party is added.[24] To cure this concern, the Court extended the mediation deadline. (Order, ECF No. 51). This case is in relatively early stages, with mediation discovery ongoing and mediation now set to occur within the next 60 days. Consequently, the Court finds any prejudice to MWCB to be minimal at best, rather than undue.

Also worthy of consideration is: whether C&W Services asserts its proposed claims in this action, or files a separate action, it appears it intends to make those claims.

---

[20] *Carefusion 213*, 2010 WL 4004874, at *4 (internal citations omitted).

[21] *Id*. (citing *U.S. v. Sturdevant,* No. 07–2233–KHV–DJW, 2008 WL 4198598, at *3 (D. Kan. Sept. 11, 2008) (citing *Minter*, 451 F.3d at 1208; *Jones v. Wildgen,* 349 F. Supp. 2d 1358, 1361 (D. Kan. 2004))).

[22] *Id*. (citing *Sturdevant,* 2008 WL 4198598, at *3; other internal citations omitted).

[23] *Minter*, 451 F.3d at 1207 (noting, "The second, and most important, factor in deciding a motion to amend the pleadings, is whether the amendment would prejudice the nonmoving party.")

[24] The October 27, 2021 conference was not recorded or transcribed; however, the Court maintains its own notes of the hearing in its electronic file.

Permitting it to do so within this case, already in progress, furthers the interests of economy and efficiency for both the Court and the parties. For the above reasons, the Court finds no more than practical prejudice, which will not prevent amendment.

### 4.        Futility

Finding C&W Services' request to amend timely, lacking bad faith, and no undue prejudice exists, the Court next considers whether the amendment would be futile. As the party opposing amendment, MWCB bears the burden of establishing its futility.[25] "A proposed amendment is futile if [the proposed claim] would be subject to dismissal."[26] The proposed pleading is then analyzed using the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). When utilizing this standard, "the court must accept as true all well-pleaded factual allegations and view them in the light most favorable to the pleading party."[27] Only if the court finds "the proposed claims do not contain enough facts to state a claim for relief that are plausible on their face or the claims otherwise fail as a matter of law"[28] should the court find the amendment futile.

---

[25] *Neonatal Prod. Grp., Inc. v. Shields*, No. 13-2601-DDC-KGS, 2015 WL 1957782, at *2 (citing *Boykin v. CFS Enter., Inc.,* No. 08–2249–CM–GLR, 2008 WL 4534400, at *1 (D. Kan. Oct. 6, 2008)).

[26] *BAC Local Union 15 Welfare Fund v. McGill Restoration, Inc.*, No. 16-CV-2082-JAR-TJJ, 2016 WL 7179464, at *3 (D. Kan. Dec. 9, 2016) (citing *Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1288 (10th Cir. 2008)).

[27] *Carefusion 213*, 2010 WL 4004874, at *5 (citing *Anderson v. Suiters,* 499 F.3d 1228, 1238 (10th Cir. 2007) (internal citations omitted)).

[28] *Id*. (citing *Raytheon Aircraft Co. v. U.S.,* 501 F. Supp. 2d 1323, 1327 (D. Kan. 2007); *see also Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).

MWCB contends the claim against Crossland is both premature and futile. But, as a threshold issue, "[c]urrent parties unaffected by a proposed amendment do not have standing to assert claims of futility on behalf of proposed defendants. Rather, a current party may only challenge a proposed amendment directed at other parties to the extent that the party opposing the amendment is affected—for example through undue delay or undue prejudice."[29]

Although C&W Services contends Crossland is a member of Plaintiff MWCB's LLC, MWCB presents no arguments about this issue. Without additional information, the Court cannot determine whether MWCB is truly affected by the proposed amendment, aside from the lack of undue delay and lack of prejudice already addressed above. This causes the Court to question whether MWCB's futility arguments are properly advanced. Even if the Court were to address the futility argument on its merits, when reviewing the proposed claims in the light most favorable to C&W Services, as the Court is required to do at this stage, the claim appears at least plausible on the face of the proposed pleading.

The issue before the undersigned Magistrate Judge, in this motion, is not whether C&W Services "will ultimately prevail on the [proposed claim], but whether it is entitled to offer evidence to support its allegations."[30] Whether or not the claims will prevail will be questions for the trier of fact at a later date. And, in fact, prior to the entry of this Order, both NetApp and Crossland filed separate motions to dismiss the Third-Party Complaint,

---

[29] *Silva v. Ekis*, No. 15-3007-CM, 2017 WL 5465531, at *1 (D. Kan. Nov. 14, 2017) (internal citations omitted).
[30] *Safetech Int'l, Inc. v. Air Prod. & Controls, Inc.*, No. 02-2216-JAR, 2002 WL 31833262, at *2 (D. Kan. Dec. 5, 2002) (other internal citations omitted).

which are pending before the District Judge. (ECF Nos. 58, 64.) For the above reasons, the Court will not deny, as futile, C&W Services' request to amend its Third-Party Complaint.

### 5.      Rule 14 Analysis

Plaintiff MWCB does not address the Rule 14 analysis in its Response, and as noted, no other party opposes amendment. However, a brief review of the rule is necessary. The Court has addressed the timeliness of C&W Services' request and the lack of prejudice in its Rule 15 analysis and does not repeat it here. The Court finds the benefits of a single lawsuit which includes Crossland outweigh any potential prejudice to any party. Questions regarding which entity or agent directed the work at the subject location are at the center of the claims and defenses in this case, and addressing those questions will necessarily involve all potential parties. Permitting the addition of Crossland in advance of the parties' mediation deadline will bring all potential parties to the table. Therefore, the Court finds in its discretion the addition of Crossland as a third-party defendant is proper at this juncture under Fed. R. Civ. P. 14.

### D.      Conclusion on Amendment

As discussed above, the Court in its discretion will allow C&W Services to amend the Third-Party Complaint. Because the Court prefers the case to proceed on its full merits,[31] in the interests of justice C&W Services was ordered to file its amended pleading by November 3, 2021. (Order, ECF No. 51.) The pleading was filed (ECF No. 52), both NetApp and Crossland have responded (ECF Nos. 57, 58, 64) and the case continues to

---

[31] *See Hinkle*, 2012 WL 2581000, at *1 (citing *Koch*, 127 F.R.D. at 209).

proceed on the merits.

## III.    Discovery Rulings

Multiple discovery disputes were discussed and resolved by the Court during the October 27, 2021 conference, including the sufficiency of C&W's Privilege Log, provided in response to MWCB's Request for Production Nos. 2 and 4.

Relevant to the parties' dispute is a general timeline of events. NetApp and C&W Services were parties to a Master Business Process Outsourcing Agreement, effective as of September 1, 2018 and amended on February 11, 2019, and attendant Statements of Work (collectively, the "NetApp Agreement"). (First Am. Third-Party Compl., ECF No. 52 at 3.) Under the NetApp Agreement, C&W Services provided services and staff at the subject location through both written and verbal work orders. During the NetApp agreement, NetApp sold the location to MWCB, and MWCB engaged Crossland to perform work at the same location. (*Id.* at 4.) Although the timing of what work was performed and at whose direction is the subject of dispute, on August 22, 2020, NetApp personnel emailed C&W Services personnel to officially notify C&W Services of the property damage. In this email, NetApp notified C&W Services the "matter is being transferred over to C&W Services to take appropriate action."[32] MWCB filed this action on January 25, 2021. (Compl., ECF No. 1.)

---

[32] An in camera inspection of the documents contained on C&W Services' Privilege Log revealed multiple copies of the referenced email dated August 22, 2020. Although the email does not appear in any publicly filed document in the Court's Electronic Filing System, the email from Ralph Renne at NetApp was directed to Wayne Potter at C&W Services, and copied to other NetApp, Crossland and C&W Services' personnel, and is almost certainly possessed by all parties to this litigation.

MWCB seeks to discover the interview records of C&W Services' employees from August 2020. Its requests seek factual information learned during the investigation which C&W Services undertook following damage to the MWCB building and the sale of copper wire and materials taken from the MWCB building. It contends NetApp has produced its own interview notes of the three C&W Services' employees, and the police report has been produced, but it still needs to discover the underlying facts of what C&W Services' employees said in all interviews. MWCB contends any applicable privilege does not protect the underlying facts discovered in the investigation.

C&W Services contends when NetApp and MWCB accused its employees of the theft and property damage, the accusations triggered an investigation that immediately involved legal counsel, and the investigation was pursued under legal advice. Therefore, it contends it properly included the investigation materials on a privilege log. It maintains the material largely consists of legal memoranda, which include the mental impressions of those who were interviewed, and the memoranda were prepared for the very real threat of litigation. C&W Services contends it provided facts where requested through discovery, but the items contained on its privilege log are properly withheld pursuant to the attorney-client privilege and/or work product privilege as described on the log.

During the discovery conference, the undersigned found the privilege log was appropriately prepared and contained the necessary information; however, the Court determined an in camera inspection of the 34 items (124 pages) referenced on C&W Services' privilege log was necessary to assess the privilege claims. C&W Services was ordered to produce its investigative file to the undersigned for the Court's in camera review,

and the Court has now reviewed the production and is prepared to rule.

### A.      Legal Standards

Fed. R. Civ. P. 26(b) and 34 address the scope of discovery regarding document production. Fed. R. Civ. P. 26(b) provides "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ." And, Fed. R. Civ. P. 34(b) states a party objecting to a request for documents "must state whether any responsive materials are being withheld on the basis of that objection." The party asserting an objection of work product immunity or attorney-client privilege bears the burden of establishing that either or both apply.[33]

**Work product protection** is reviewed under federal law.[34] Fed. R. Civ. P. 26(b)(3) provides "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." To establish work-product protection, a party must show "(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party."[35]

Whether documents are prepared in anticipation of litigation requires "a case-by-

---

[33] *Gray v. Conner Indus., Inc.*, No. 20-1037-TC-GEB, 2021 WL 663203, at *2 (D. Kan. Feb. 19, 2021) (citing *Marten v. Yellow Freight System, Inc.*, No. 96-cv-2013, 1998 WL 13244, *4 (D. Kan. Jan. 6, 1998)).

[34] *Id*. at *2 (quoting *Kannaday v. Ball*, 292 F.R.D. 640, 648 (D. Kan. 2013); *also citing S.E.C. v. McNaul*, 271 F.R.D. 661, 665 (D. Kan. 2010)).

[35] *Id*. at *2 (citing *Kannaday,* 292 F.R.D. at 648).

case analysis, considering the unique factual context of the given problem."[36] There are two components in determining whether documents are prepared in anticipation of litigation: 1) causation – whether the document was created because of the anticipation of litigation; and 2) reasonableness – whether the threat of litigation is real and imminent.[37] A threat of litigation is real and imminent when there is a "substantial probability that litigation will ensue at the time the documents were drafted."[38]

Because jurisdiction in this case is based on the diversity of the parties, the **attorney-client privilege** is governed by state law.[39] Under Kansas law, the elements necessary to establish attorney-client privilege are:

> (1) Where legal advice is sought (2) from a professional legal advisor in his capacity as such, (3) the communications made in the course of that relationship (4) made in confidence (5) by the client (6) are permanently protected (7) from disclosures by the client, the legal advisor, or any other witness (8) unless the privilege is waived.[40]

But, not all communications involving attorneys are privileged.[41] The attorney-client privilege "protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor."[42] "Legal advice

---

[36] *Id*. at *3 (quoting *Quality Time, Inc. v. West Bend Mut. Ins. Co.*, No. 12-cv-1008, 2012 WL 5499555, *6 (D. Kan. Nov. 13, 2012)).

[37] *Id*. (citing *Quality Time*, 2012 WL 5499555 at *6).

[38] *Id*. (citing *Quality Time*, 2012 WL 5499555 at *6).

[39] *Id*. (citing Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."); *see also Kannaday*, 292 F.R.D. at 646 ("state law governs the applicability and scope of attorney-client privilege in diversity actions").

[40] *Id*. at *4 (quoting *Marten*, 1998 WL 13244, *5-6) (citing *State v. Maxwell*, 10 Kan. App. 2d 62, 63, (1984)).

[41] *Id*. (citing *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550-51 (10th Cir. 1995)).

[42] *Id*. (citing *Marten*, 1998 WL 13244 at *6; also K.S.A. § 60-426).

must predominate for the communication to be protected."[43]

K.S.A. § 60-246 defines client and communication as follows:

(1) "Client" means a person or corporation or other association that, directly or through an authorized representative, consults an attorney or attorney's representative for the purpose of retaining the attorney or securing legal service or advice from the attorney in a professional capacity; and includes an incapacitated person who, or whose guardian on behalf of the incapacitated person, so consults the attorney or the attorney's representative on behalf of the incapacitated person.[44]

(2) "Communication" includes advice given by the attorney in the course of representing the client and includes disclosures of the client to a representative, associate or employee of the attorney incidental to the professional relationship.

"[T]he attorney-client privilege does not require an attorney to have either authored or received the document at issue in order to maintain the privilege."[45] "What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer."[46] "Therefore, where the client is a corporation, attorney-client privilege may attach to documents transmitted between non-attorney employees of the corporation if the communications are confidential and are for the purpose of obtaining legal advice from an attorney."[47]

But "[t]he privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney:

---

[43] *Id*. (citing *Taylor v. LM Ins. Corp*., No. 19-1030, 2019 WL 5696861, *5 (D. Kan. Nov. 4, 2019)).

[44] K.S.A. § 60-426(c)(1).

[45] *High Point SARL v. Sprint Nextel Corp*., No. 09-2269-CM, 2012 WL 234024, at *13 (D. Kan. Jan. 25, 2012), *on reconsideration in part*, No. 09-2269-CM, 2012 WL 1580634 (D. Kan. May 4, 2012) (citing *Williams v. Sprint/United Mgmt. Co.,* No. 03–2200–JWL–DJW, 2006 WL 266599, at *2 (D. Kan. Feb. 1, 2006)).

[46] *Id*. (quoting *Williams*, 2006 WL 266599, at *2).

[47] *Id*.

"[T]he protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney."[48]

## B.  Findings on C&W Services' Privilege Assertions

Utilizing the standards outlined above, the Court analyzes Items 1 through 34, pages

1 through 124, on C&W Services' Privilege Log as follows:

| Privilege Log Item# / In Camera Document# | In camera page # | Court's Ruling on Production |
|---|---|---|
| 1 | 0001 - 0010 | Email from counsel; **properly withheld** as attorney-client privileged, work product protected information. |
| 2 | 0011 – 0013 | Email to counsel; duplication of pages noted above. **Properly withheld** as attorney-client privileged, work product protected. |
| 3 | 0014 - 0019 | Email to counsel; duplication of pages notes above. **Properly withheld** as attorney-client privileged, work product protected. |
| 4 | 0020 - 0022 | March 12, 2020 emails forwarded to counsel on September 2, 2020. Although these emails appear to be forwarded to counsel, they do not appear to relate to the investigation or theft, and their creation clearly predates the investigation at issue. No legal advice is included or other mental impression of counsel. **The Court finds they are not properly withheld as attorney-client privileged or work product protected documents and must be produced**. A party "cannot refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his |

---

[48] *Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981) (quoting *Philadelphia v. Westinghouse Electric Corp.*, 205 F. Supp. 830, 831 (E.D. Pa. April 27, 1962)).

| | | |
|---|---|---|
| | | communication to his attorney."[49] |
| 5 | 0023 - 0026 | November 8, 2019 emails forwarded to counsel on September 2, 2020. Although these emails appear to be forwarded to counsel, they do not appear to relate to the investigation or theft, and their creation clearly predates the investigation at issue. No legal advice is included or other mental impression of counsel. **The Court finds they are not properly withheld as attorney-client privileged or work product protected documents and must be produced**. A party "cannot refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney."[50] |
| 6 | 0027 - 0045 | August 22, 2020 initial report email from NetApp personnel to C&W Services personnel, later forwarded by C&W Services personnel on September 1, 2020 to counsel. Although these emails appear to be forwarded to counsel, their creation was by NetApp and predates C&W's investigation, and in fact, spurred the investigation. No legal advice is included or other mental impression of counsel. **The Court finds they are not properly withheld as attorney-client privileged or work product protected documents and must be produced**. A party "cannot refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney."[51] |
| 7 | 0046 – 0047 | April 6, 2020 emails between NetApp personnel and C&W Services personnel regarding quarantine-related furlough of CW Services employees. Although the emails appear to be forwarded to counsel on September 2, 2020, their creation predates the investigation and does not appear to be for the purpose of legal advice. No legal advice is included or other mental impression of counsel. **The Court finds they are not properly withheld as attorney-client privileged or work product protected documents and must be produced**.[52] |
| 8 | 0048 - 0049 | August 10, 2020 emails between NetApp personnel and C&W Services personnel regarding work plan/work assignments. Although the emails were forwarded to counsel |

---

[49] *Id.*
[50] *Id.*
[51] *Id.*
[52] *Id.*

| | | |
|---|---|---|
| | | on September 2, 2020, their creation predates the investigation and does not appear to be for the purpose of legal advice. No legal advice is included or other mental impression of counsel. **The Court finds they are not properly withheld as attorney-client privileged or work product protected documents and must be produced**. A party "cannot refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney."[53] |
| 9 | 0050 | November 14, 2019 emails between NetApp personnel and C&W Services personnel regarding security access records. As noted above, these emails were forwarded to counsel on September 2, 2020, but their creation predates the investigation. No legal advice is included or other mental impression of counsel. **The Court finds they are not properly withheld as attorney-client privileged or work product protected documents and must be produced**. A party "cannot refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney."[54] |
| 10 | 0051 - 0058 | November 18, 2019 emails between NetApp personnel and C&W Service personnel regarding FY20 CW Services project proposal. As noted above, these emails were forwarded to counsel on September 2, 2020, but their creation predates the investigation. No legal advice is included or other mental impression of counsel. **The Court finds they are not properly withheld as attorney-client privileged or work product protected documents and must be produced**. A party "cannot refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney."[55] |
| 11 | 0059 | April 14, 2020 email originating from NetApp personnel to C&W Services personnel regarding furloughs of employees in Wichita. As noted above, these emails were forwarded to counsel on September 2, 2020, but their creation predates the investigation. No legal advice is included or other mental impression of counsel. **The Court finds they are not** |

---

[53] *Id.*
[54] *Id.*
[55] *Id.*

| | | |
|---|---|---|
| | | **properly withheld as attorney-client privileged or work product protected documents and must be produced.** A party "cannot refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney."[56] |
| 12 | 0060 - 0086 | Memorandum containing interview notes dated August 26, 2020 through October 8, 2020 compiled by C&W Services personnel during/about witness interviews conducted for the purpose of obtaining legal advice from counsel, and/or under the supervision of counsel. The interviews were clearly conducted after the investigation was instigated and legal counsel became involved in the process. **Properly withheld** as attorney-client privileged, work product protected. |
| 13 | 0087 - 0089 | Memorandum containing a compilation of employee interview notes created by C&W Services personnel during/about witness interviews conducted for the purpose of obtaining legal advice from counsel, and/or under the supervision of counsel. The interviews were clearly conducted after the investigation was instigated and legal counsel became involved in the process. **Properly withheld** as attorney-client privileged, work product protected. |
| 14 | 0090 – 0093 | Memorandum containing timeline of events, including compliance manager's mental impressions, prepared for the purpose of obtaining legal advice from counsel and/or under the supervision of counsel in anticipation of litigation. As above, the interviews and timeline were created after the investigation began and legal counsel became involved in the process. **Properly withheld** as attorney-client privileged, work product protected. |
| 15 | 0094 | Emails dated September 11 and 13, 2021, between C&W compliance officials concerning PTO dates of C&W Services' staff member at the subject location; gathered for the purpose of obtaining legal advice from counsel and at the direction and/or under the supervision of counsel in anticipation of a threat of litigation. The emails were created after the investigation began and legal counsel became involved. **Properly withheld** as attorney-client privileged, work product protected. |
| 16 | 0095 - | Email dated September 8, 2021, between C&W officials |

---

[56] *Id.*

| | 0097 | concerning PTO dates of C&W Services' staff member at the subject location; gathered for the purpose of obtaining legal advice from counsel and at the direction and/or under the supervision of counsel in anticipation of a threat of litigation. The emails were created after the investigation began and legal counsel became involved. **Properly withheld** as attorney-client privileged, work product protected. |
|---|---|---|
| 17 | 0098 | Draft memorandum containing potential interview topics and mental impressions of C&W Services' compliance manager prepared for the purpose of obtaining legal advice from counsel and at the direction and/or under the supervision of counsel in anticipation of a threat of litigation. The memo was created after the investigation began and legal counsel became involved. **Properly withheld** as attorney-client privileged, work product protected. |
| 18 | 0099 - 0100 | Draft memorandum containing potential interview topics and mental impressions of C&W Services' compliance manager prepared for the purpose of obtaining legal advice from counsel and at the direction and/or under the supervision of counsel in anticipation of a threat of litigation. The memo was created after the investigation began and legal counsel became involved. **Properly withheld** as attorney-client privileged, work product protected. |
| 19 | 0101 – 0103 | Emails dated September 8-9, 2020, between C&W Services personnel containing timeline of events, gathered for the purpose of obtaining legal advice from counsel and at the direction and/or under the supervision of counsel in anticipation of a threat of litigation. The memo was created after the investigation began and legal counsel became involved. **Properly withheld** as attorney-client privileged, work product protected. |
| 20 | 0104 | Map of the subject property originally produced by NetApp personnel but annotated by C&W compliance personnel for the purpose of obtaining legal advice and in anticipation of litigation. **Properly withheld** as attorney-client privileged, work product protected. |
| 21 | 0105 - 0106 | Memorandum/notes dated September 16, 2020 prepared by in-house counsel memorializing internal meeting with counsel. Contains counsel's mental impressions concerning MWCB allegations prepared in anticipation of a threat of litigation. **Properly withheld** as attorney-client privileged, |

| | | |
|---|---|---|
| | | work product protected. |
| 22 | 0107 - 0108 | Memorandum/notes dated January 5, 2021 prepared by in-house counsel memorializing meeting of electrician and counsel. Includes counsel's mental impressions concerning MWCB allegations prepared in anticipation of a threat of litigation. **Properly withheld** as attorney-client privileged, work product protected. |
| 23 | 0109 | Memorandum/notes dated September 24, 2020 prepared by in-house counsel, memorializing meeting with external legal counsel. Contains counsel's mental impressions concerning MWCB allegations prepared in anticipation of a threat of litigation. **Properly withheld** as attorney-client privileged, work product protected. |
| 24 | 0110 | Memorandum/notes dated September 23, 2020, prepared by in-house counsel, memorializing internal meeting with counsel. Includes counsel's mental impressions concerning MWCB allegations prepared in anticipation of a threat of litigation. **Properly withheld** as attorney-client privileged, work product protected. |
| 25 | 0111 - 0112 | Memorandum/notes dated December 8, 2020, prepared by in-house counsel, memorializing internal meeting with counsel. Includes counsel's mental impressions concerning MWCB allegations prepared in anticipation of a threat of litigation. **Properly withheld** as attorney-client privileged, work product protected. |
| 26 | 0113 | Memorandum/notes dated December 15, 2020, prepared by in-house counsel, memorializing internal meeting with counsel. Includes counsel's mental impressions concerning MWCB allegations prepared in anticipation of a threat of litigation. **Properly withheld** as attorney-client privileged, work product protected. |
| 27 | 0114 | Memorandum/notes dated September 25, 2020 (according to privilege log), clearly prepared by in-house counsel, memorializing internal meeting with counsel. Includes counsel's mental impressions concerning MWCB allegations prepared in anticipation of a threat of litigation. **Properly withheld** as attorney-client privileged, work product protected. |
| 28 | 0115 - 0116 | Memorandum/notes dated September 10, 2020, prepared by in-house counsel, memorializing internal meeting with |

| | | |
|---|---|---|
| | | counsel. Includes counsel's mental impressions concerning MWCB allegations prepared in anticipation of a threat of litigation. **Properly withheld** as attorney-client privileged, work product protected. |
| 29 | 0117 | Memorandum/notes dated October 13, 2020, prepared by in-house counsel, memorializing internal meeting with counsel. Includes counsel's mental impressions concerning MWCB allegations prepared in anticipation of a threat of litigation. **Properly withheld** as attorney-client privileged, work product protected. |
| 30 | 0118 | Memorandum/notes dated October 27, 2020, prepared by in-house counsel, memorializing internal meeting with counsel. Includes counsel's mental impressions concerning MWCB allegations prepared in anticipation of a threat of litigation. **Properly withheld** as attorney-client privileged, work product protected. |
| 31 | 0119 | Memorandum/notes dated October 22, 2020, prepared by in-house counsel, memorializing internal meeting with counsel. Includes counsel's mental impressions concerning MWCB allegations prepared in anticipation of a threat of litigation. **Properly withheld** as attorney-client privileged, work product protected. |
| 32 | 0120 | Memorandum/notes dated November 20, 2020, prepared by in-house counsel, memorializing internal meeting with counsel. Includes counsel's mental impressions concerning MWCB allegations prepared in anticipation of a threat of litigation. **Properly withheld** as attorney-client privileged, work product protected. |
| 33 | 0121 - 0123 | Memorandum/notes dated January 14, 2021, prepared by in-house counsel, memorializing internal meeting with counsel. Includes counsel's mental impressions concerning MWCB allegations prepared in anticipation of a threat of litigation. **Properly withheld** as attorney-client privileged, work product protected. |
| 34 | 0124 | Memorandum/notes dated February 9, 2021, prepared by in-house counsel, memorializing internal meeting with counsel. Includes counsel's mental impressions concerning MWCB allegations prepared in anticipation of a threat of litigation. **Properly withheld** as attorney-client privileged, work product protected. |

## IV.  Modified Schedule

As noted in the prior Order (ECF No. 51), in light of the ongoing discovery disputes and the amendment of the pleadings, the Phase I Scheduling Order is modified as follows: the mediation deadline is extended to **January 21, 2022**. NetApp must file a notice of mediation no later than **December 17, 2021**. Additionally, by **December 17, 2021**, the parties must submit an informal status report by email to the undersigned such that the Court will be able to determine whether this case is prepared for mediation or will need a full schedule.

## V.  Conclusion

For the reasons stated in the October 27, 2021 hearing and recited above:

**IT IS THEREFORE ORDERED** that Defendant/Third-Party Plaintiff C&W Services' Motion for Leave to amend its Third-Party Complaint (**ECF No. 45**) is **GRANTED.** As ordered at hearing, the First Amended Third-Party Complaint was filed. (ECF No. 52.)

**IT IS FURTHER ORDERED** that C&W Services must produce Items No. 4 through 11 listed on its privilege log as explained above, as not protected by the attorney-client privilege or work product doctrine.

**IT IS FURTHER ORDERED** the schedule is modified as set forth herein.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 7th day of December, 2021.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge