IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS,

MWCB ROCK ROAD, LLC,

           Plaintiff,

Vs.                                                                                   No. 21-1022-SAC-GEB

C&W FACILITY SERVICES, INC.,

           Defendant/Third-Party Plaintiff,

Vs.

NETAPP, INC., and CROSSLAND
CONSTRUCTION, INC.,

           Third-Party Defendants.

MEMORANDUM AND ORDER

        The case comes before the court on NetApp, Inc's ("NetApp's") motion to dismiss or for judgment on the pleadings, (ECF# 58), and on Crossland Construction, Inc.'s ("Crossland's") motion to dismiss (ECF# 64). The plaintiff MWCB Rock Road, LLC, ("MWCB") brought this action against C&W Facility Services, Inc. ("C&W") to recover the damage done to its building at 3718 N. Rock Road, Wichita, Kansas ("3718") by C&W employees who stripped "wiring from equipment and from the electrical service to the building and from electrical panels in the data enter and labs located at the building." ECF# 9, ¶ 10. MWCB alleges C&W employees then sold the stripped material as scrap and kept the proceeds. Id. at ¶ 11. MWCB also alleges it did not authorize or ratify these actions of C&W's employees. Id. at ¶ 12.

        As background, the plaintiff MWCB alleges it purchased 3718 from NetApp with NetApp remaining as a tenant but reducing the size of its tenancy in

anticipation of the move to its new location. *Id.* at ¶ 5. According to C&W, it was engaged by NetApp to perform services pursuant to a Master Business Process Outsourcing Agreement which was later amended and pursuant to related Statements of Work (collectively termed "NetApp Agreement") at different NetApp locations, including 3718. ECF# 13, ¶ 6, #52, ¶ 9.

MWCB's second amended complaint sets forth two common-law tort claims against C&W. ECF# 9. Count one asserts negligent supervision in that C&W's employees were at 3718 under C&W's supervision and acted within the scope of their employment in stripping the wiring. Count two asserts conversion in that C&W's employees exercised dominion and control over MWCB's property to its exclusion by taking the misappropriated wiring and items. MWCB alleges C&W is liable for its employees' conversion.

In its first amended third-party complaint, C&W alleges the following. Its staff worked at 3718 under NetApp's direction, presence, and supervision through written work orders and verbal instructions. ECF# 52, ¶ 12. During the operation of the NetApp agreement, NetApp sold 3718 to MWCB, and MWCB engaged Crossland as its contractor for work to be done at 3718. *Id.* at ¶ 15. Around January 2020, NetApp verbally instructed C&W employees to assist the transition of 3718 from NetApp to MWCB and to perform work "at the direction of Crossland as NetApp vacated a portion of the facility." *Id.* at ¶ 16. At ¶ 19, C&W alleges:

> On information and belief, beginning in February or March 2020, and at the verbal direction of NetApp and Crossland, C&W Services' staff did certain work as instructed by NetApp and Crossland to help Crossland dismantle and remove electrical equipment, conduits, and/or wire from labs located at the facility. Among the work performed in accordance with the verbal direction of NetApp and Crossland, Crossland personnel directed C&W Services' staff to

>assist Crossland in clearing materials from Labs A and C at 3718 Rock Road. Crossland personnel also authorized the removal of that material from 3718 Rock Road for recycling.

*Id*. at ¶ 19.

C&W asserts in count one implied indemnity against NetApp and in count two implied indemnity against Crossland. Both counts assert, if MWCB's allegation that the wiring and electrical equipment were removed without its consent is true, then NetApp and Crossland "tortiously directed C&W's Services' staff to remove materials and perform unauthorized work at the facility." *Id*. at ¶¶ 26 and 34. If it is found liable on MWCB's claim of damages, C&W asserts it is entitled first to implied contractual indemnity from NetApp and Crossland because their "tortious acts, omissions, and/or negligence in directing C&W" caused MWCB's damages. *Id*. at ¶¶ 28 and 36. C&W alternatively asserts that if found liable then it's entitled to comparative implied indemnity with damages apportioned by the comparative fault of MWCB, C&W, NetApp, Crossland, and any others. *Id*. at ¶¶ 29 and 37.

**NETAPP'S MOTION TO DISMISS or JUDGMENT ON THE PLEADINGS (ECF# 58).**

A Rule 12(b)(6) motion to dismiss for failure to state a claim "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). NetApp has filed its answer to the C&W's first amended third party complaint. ECF# 57. A party waives its right to file a Rule 12(b) motion by filing an answer. *Santa Fe Alliance for Public Health and Safety v. City of Santa Fe, New Mexico*, 993 F.3d 802, 809 n.3 (10th Cir. 2021), *petition for cert. filed,* (Oct. 29, 2021). And a Rule 12(c) is premature when the pleadings are not closed because other defendants have filed Rule 12(b) motions and have not filed their answers. *Id*. Therefore, NetApp's Rule

3

12(c) motion is premature and will be denied without prejudice. NetApp may refile its motion after Crossland has answered or has been dismissed. *See Gorenc v. Klaassen*, No. 18-2403-DDC-JPO, 2019 WL 2523566, at *2 (D. Kan. Jun. 19, 2019).

**CROSSLAND'S MOTION TO DISMISS (ECF# 64)**

"A pleading is required to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *SEC v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting Fed. R. Civ. P. 8(a)(2)). All well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favoring the plaintiff. *Farmer v. Kansas State University*, 918 F.3d 1094, 1102 (10th Cir. 2019). But, when the complaint alleges legal conclusions, those allegations are not subject to the same rule of being accepted as true. *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017).

"A complaint cannot survive a motion to dismiss unless it 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Doe v. School District No. 1, Denver, Colorado*, 970 F.3d 1300, 1309 (10th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To be plausible on its face, the complaint's "factual allegations [must] allow the court to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "In determining the plausibility of a claim, we look to the elements of the particular cause of action, keeping in mind that the Rule 12(b)(6) standard [does not] require a plaintiff to 'set forth a prima facie case for each element.'" *George v. Urban Settlement Services*, 833 F.3d 1242, 1247 (10th

Cir. 2016) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1192–93 (10th Cir. 2012)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Allegations "upon information and belief" may be made "so long as the complaint sets forth the factual basis of the belief." *Moore v. Kobach*, 359 F.Supp.3d 1029, 1040 (D. Kan. 2019) (quoiting *Jackson-Cobb v. Sprint United Management*, 173 F.Supp.3d 1139, 1149 (D. Colo. 2016)). Thus, such allegations trigger the question whether they "are supported by specific facts asserted by the Complaint." *Id.*

>Kansas law on indemnity has been summarized in these terms:

> Kansas recognizes three types of indemnity claims: (1) express contractual indemnity; (2) implied contractual indemnity; and (3) comparative implied indemnity. Express contractual indemnity arises where there is a contract of indemnity, such as a hold harmless agreement. Implied contractual indemnity arises when one is compelled to pay what another party ought to pay; generally, when a party without fault is made to pay for a tortious act of another and seeks indemnity from the party at fault. Although this theory has frequent viability in the context of respondeat superior, it is not limited to this context. *See, e.g., Haysville U.S.D. No. 261 v. GAF Corp.*, 233 Kan. 635, 666 P.2d 192 (1983). Comparative implied indemnity is an equitable remedy available to a tortfeasor among other tortfeasors, who by settling with the plaintiff or paying a judgment, pays the other tortfeasors' share of liability. *Schaefer v. Horizon Building Corp.*, 26 Kan.App.2d 401, 985 P.2d 723 (1999).

*Unified Sch. Dist. 467 v. Leland A. Gray Architects, LLC*, 112 F. Supp. 3d 1223, 1228–29 (D. Kan. 2015).

"'It is well settled in Kansas that an indemnity claim does not arise until the indemnitee becomes obligated to pay, whether by judgment or settlement.'" *Med James, Inc. v. Barnes*, 31 Kan.App.2d 89, 99-100, 61 P.3d 86, 94 (quoting *St. Francis Regional Medical v. Critical Care, Inc.*, 997 F. Supp. 1413, 1433 (D.Kan.1997)), *rev.*

*denied*, 275 Kan. 965 (2003). A claim for implied contractual indemnity "*usually* arises when one personally, without fault, is made to pay for a tortious act of another." *Haysville U.S.D. No. 261 v. GAF Corp.*, 233 Kan. 635, 642, 666 P.2d 192 (1983). The Kansas Court of Appeals has held:

> "If it is determined by the jury that Hamm is vicariously liable for Dustrol's negligence, then Hamm may have an independent claim for implied indemnification. However, a claim for implied indemnity is foreclosed to an indemnitee who itself was negligent, apart from the negligence imputed to it by its employee. In short, an indemnitee may only be implicitly indemnified when it is completely without fault. See *United States Fid. & Guar. Co. v. Sulco, Inc.*, 939 F.Supp. 820, 825 (D.Kan. 1996) ('The court finds that where, as in this case, vicarious liability gives rise to a claim for implied contractual indemnity, Kansas law requires the [indemnitee] to be faultless in order to recover; that is, [the indemnitee]'s liability must be solely derivative.') (citing Kansas cases). See also *St. Francis Reg'l Med. Ctr. v. Critical Care, Inc.*, 997 F.Supp. 1413, 1432 (D.Kan.1997) (noting that because implied indemnification is equitable in nature, it is generally unavailable to malfeasants)."

*Med James, Inc.*, 31 Kan. App. 2d at 100-101 (quoting *Nolde v. Hamm Asphalt, Inc.*, 202 F.Supp.2d 1257, 1271 (D. Kan. 2002)). "A weighing of the relative fault of the parties has no place in an action for implied contractual indemnity because the one seeking indemnity must be without fault." *Id*. at 101 (citing *Becker v. Buman*, 239 Kan. 342, 349, 721 P.2d 246 (1986) ("action for indemnity is inappropriate where the judgment against the party seeking indemnity is based upon the wrongdoing of that party")). Judge Vratil recently observed:

> Even so, Kansas courts appear to permit an implied contractual indemnity claim without reference to whether the underlying claim was brought in contract or tort. See U.S. Fid. & Guar. Co. v. Sulco, Inc., 939 F. Supp. 820, 825 (D. Kan. 1996) (even where right to implied contractual indemnity arises out of defendant's negligence, tort statute of limitations does not apply because indemnity claim "wholly independent as a cause of action from the transaction or situation which gave rise to the right of indemnity") (citation omitted); see also Lico Steel, Inc. v. Harris Constr. Co., Inc., No. 71,647, 1996 WL 35069775, at *10 (Kan. Ct. App. Mar. 15, 1996) (implied contractual indemnity arises from the "obligations flowing between indemnitor and indemnitee, rather than being

6

> founded upon a tort or upon any duty which the indemnitor owes to an injured third party") (quoting 42 C.J.S., Indemnity § 31).

*Water Dist. No. 1 of Johnson County, Kansas v. S.J. Louis Constr., Inc.*, No. 21-2070-KHV, 2021 WL 5084180, at *6 (D. Kan. Nov. 2, 2021). Guided by Judge Rogers' decision in *Unified Sch. Dist. 467 v. Leland A. Gray Architects, LLC*, 112 F. Supp. 3d 1223 (D. Kan. 2015), Judge Vratil held that a complaint alleged more than a relationship between a consumer and manufacturer and plausibly claimed an implied contractual relationship. *Id.*

The court agrees with C&W that it has alleged a plausible implied contractual indemnity claim. C&W denies any fault for the damages done by its staff removing and selling the wiring and equipment because its staff was acting under the written and verbal directions of Crossland and NetApp and C&W relied on Crossland's and NetApp's apparent authority. C&W alleges a relationship with Crossland arising from its agreement and verbal understanding with NetApp to assist with the transition and to perform work under Crossland's direction. While C&W does not list by name Crossland's tortious acts, it is enough to allege facts indicative of tortious conduct. *See Philadelphia Indemnity Ins. Co. v. Midwest Steel Fab, LLC*, No. 19-1026-EFM, 2021 WL 2711152, at *5 (D. Kan. Jul. 1, 2021). C&W alleges that Crossland and its agents engaged in tortious or negligent acts or omissions "in directing C&W Services" staff in the alleged removal of writing and electrical equipment. ECF# 52, ¶ 36. There are sufficient facts alleged, as highlighted below, to create a reasonable expectation that discovery will reveal evidence of tortious activity as required for relief. The court also is satisfied with C&W's allegations denying any fault. The "information and belief"

allegation prefacing ¶¶ 19 and 34 is not fatal to C&W pursuing this claim. There are supporting allegations here that C&W staff worked at 3718 under NetApp's direction, presence, and supervision through written work orders and verbal instructions. ECF# 52, ¶¶ 12 and 13. Around January 2020, NetApp verbally instructed C&W employees to assist the transition of 3718 from NetApp to MWCB and to perform work "at the direction of Crossland as NetApp vacated a portion of the facility." *Id*. at ¶ 16. In April, C&W staff completed two NetApp written work orders involving the removal of wiring and equipment at Labs A and C with some materials saved and other materials going to reclamation. *Id*. at ¶¶ 17-18. "At all times, the work performed by C&W Services' staff at 3718 Rock Road was conducted with NetApp's and Crossland's knowledge, authorization, and consent, in NetApp's and Crossland's presence, at NetApp's and Crossland's direction, and under NetApp's and Crossland's supervision." *Id*. at ¶ 32. "[A]t all times, C&W Services' staff reasonably believed that work was authorized by NetApp, Crossland, and the facility's owner, MWCB." *Id*. at ¶ 33. If adjudged liable to MWCB, C&W asserts it "is entitled to implied contractual indemnity from Crossland because Crossland and its agents' tortious acts, omissions, and/or negligence in directing C&W Services were the sole and/or proximate cause of MWCB's damages." ¶ 36. None of Crossland's arguments are persuasive in showing that these allegations fail to state a plausible claim for implied contractual indemnity.

    C&W pleads, in the alternative, that it is "entitled to comparative implied indemnity from Crossland and/or any damages awarded to MWCB should be apportioned between MWCB, C&W Services, NetApp, Crossland, and any others

8

according to their relative degree of fault, if any." *Id*. at ¶ 37. Crossland argues this claim is an impermissible use of comparative implied indemnity under Kansas law. "'Comparative implied indemnity' is an equitable remedy available to a single defendant, among a number of tortfeasors, who by settling with the plaintiff or paying a judgment, pays the other tortfeasors' share of liability." *Schaefer v. Horizon Bldg. Corp.*, 26 Kan. App. 2d 401, 403, 985 P.2d 723 (1999). Crossland argues that C&W has failed to state a claim, because active/passive negligence is no longer recognized in Kansas and because Crossland is not a joint tortfeasor. In response, C&W points to its allegations that Crossland and NetApp directed C&W's employees to remove the wiring and equipment, and this makes Crossland a joint tortfeasor for having negligently directed C&W's employees to perform work not authorized by MWCB.

The court certainly appreciates that C&W's allegation that its staff simply followed Crossland's and NetApp's direction submits to a number of different legal defenses besides comparative fault. Crossland, however, does not show that this circumstance necessarily precludes C&W from preserving comparative fault by asserting a claim of comparative implied indemnity or post-settlement contribution. That these allegations may be "better raised" as other affirmative defenses will not keep C&W from proceeding as it has chosen at this point. ECF# 65, p. 12. The Kansas Court of Appeals in *Watco Companies, Inc. v. Campbell*, 52 Kan. App. 602, 610-613, 371 P.3d 360 (2016), *review improvidently granted*, 2018 WL 2748801, 420 P.3d 389 (2018), lays out an excellent summary of this equitable remedy based upon *Kennedy v. City of Sawyer*, 228 Kan. 439, 618 P.2d 788 (1980), and the additional clarifying

9

court decisions rendered over the next 25 years. The summary is noteworthy here for

the following:

> *The One-Action Rule*—The comparison of fault of all wrongdoers should be effected in the original action. 228 Kan. at 460, 618 P.2d 788; see also *Gaulden v. Burlington Northern, Inc.*, 232 Kan. 205, 214, 654 P.2d 383 (1982) (percentage of fault should be submitted to the jury and determined in one lawsuit). But if settlement occurs before a timely comparative negligence action has been filed, "the settling tortfeasor may then and in that event file an action in court to have the degrees of responsibility among joint tortfeasors determined, damages assessed and apportionment decreed among them." *Kennedy*, 228 Kan. at 461, 618 P.2d 788; see also *Mick v. Mani*, 244 Kan. 81, 93, 766 P.2d 147 (1988) (Although the determination of contribution should be made in original action, plaintiff may pursue separate actions against joined tortfeasors where there has been no judicial determination of comparative fault. It is more accurately described as one-trial rule, instead of one-action rule.).
> *Timely Claim Against Joined Party*—The maintenance of a claim by the plaintiff against a joined party "is not a prerequisite to securing comparison." *Kennedy*, 228 Kan. at 460, 618 P.2d 788. But the defendants have the responsibility "to bring into the action all tortfeasors against whom comparative liability through indemnity is sought." 228 Kan. at 460–61, 618 P.2d 788. Once a third party is joined under K.S.A. 2015 Supp. 60-258a(c), the defendant must assert a claim for contribution or comparative implied indemnity against the third party before the running of the statute of limitations. This requirement insures that the third party is aware that he or she may be subjected to monetary liability and can appear and defend against the claim. Mere joinder is not enough. In addition a timely claim must be asserted against the third party. . . .
> . . . .
> *Postsettlement Contribution More Accurate Term*—The term comparative implied indemnity is not appropriate when the action is one for postsettlement contribution, not indemnity. The term indemnity contemplates shifting 100% of the loss from one tortfeasor to another, whereas contribution contemplates shifting only a portion of the loss for one tortfeasor to another. The more accurate term is postsettlement contribution. [citations omitted].
> . . . .
> *Procedure at Trial*—Similar to the procedure set out in Kennedy for determination of contribution when there is a settlement, in pursuing a claim for contribution the defendant must establish (1) that the third party's negligence partially caused or contributed to the injury and damages, (2) that the defendant has some causal negligence, and (3) that the plaintiff's causal negligence is less than 50% of the total causal negligence. See *Gaulden*, 232 Kan. at 214, 654 P.2d 383.

52 Kan. App. 2d at 610-613. Thus, in filing its comparative implied indemnity claim, C&W has preserved a timely claim for contribution and notified the defendants of their possible liability. Because of the singularity of the wrongful act and injury alleged here, that is, the removal of wiring and equipment, the plaintiff MWCB may be seeking to recover from only one party, but the facts as alleged now certainly submit to possible comparative fault. Indeed, the court cannot rule out the plausibility of liability here depending on the parties' respective negligence in communicating the scope of work to be done, in confirming their understanding of what work to be done, in supervising the execution of that work when done, and in reasonably performing all other related duties and expectations. And absent settlement, this matter would be readily addressed by a comparative fault determination at trial under the one-action rule. The court, therefore, denies Crossland's motion to dismiss C&W's comparative implied indemnity claim.

IT IS THEREFORE ORDERED that NetApp's motion to dismiss or for judgment on the pleadings (ECF# 58) is denied without prejudice as premature;

IT IS FURTHER ORDERED that Crossland's motion to dismiss (ECF# 64) is denied.

Dated this 19th day of January, 2022, Topeka, Kansas.

       s/Sam A. Crow
       Sam A. Crow, U.S. District Senior Judge