IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS,

MWCB ROCK ROAD, LLC,

        Plaintiff,

Vs.                                                                            No. 21-1022-SAC-GEB

C&W FACILITY SERVICES, INC.,

        Defendant/Third-Party Plaintiff,

Vs.

NETAPP, INC., and CROSSLAND

        Third-party Defendants.

MEMORANDUM AND ORDER

The case comes before the court on NetApp, Inc.'s ("NetApp's") renewed motion for judgment on the pleadings. ECF# 99. The plaintiff MWCB Rock Road, LLC, ("MWCB") is suing C&W Facility Services, Inc. ("C&W") to recover for damages to MWCB's building at 3718 N. Rock Road, Wichita, Kansas ("3718") caused by C&W employees who stripped "wiring from equipment and from the electrical service to the building and from electrical panels in the data center and labs located at the building." ECF# 9, Second Amended Complaint, ¶ 10. MWCB alleges C&W employees then sold the stripped material as scrap and kept the proceeds. *Id*. at ¶ 11. MWCB alleges it did not authorize or ratify the C&W's employees' actions. *Id*. at ¶ 12.

As background allegations, the plaintiff MWCB purchased 3718 from NetApp after which NetApp remained as a tenant, but reduced its occupied space, in anticipation of its move to a new location. *Id*. at ¶ 5. NetApp engaged C&W to

1

perform services under a Master Business Process Outsourcing Agreement which was amended later and for services pursuant to related Statements of Work (collectively termed "NetApp Agreement") at different NetApp locations including 3718. ECF# 13, Answer to Second Amended Complaint, ¶ 6; ECF# 52, First Amended Third-Party Complaint, ¶ 9.

For the property damage done to 3718, MWCB seeks to recover from C&W asserting two common-law tort claims. Count one alleges C&W negligently supervised its employees who acted within the scope of their employment in stripping the wiring. Count two alleges C&W is liable for its employees' conversion by exercising dominion and control over MWCB's property to its exclusion and by taking the misappropriated wiring and items. ECF# 9.

C&W has filed a first amended third-party complaint against NetApp and Crossland. ECF# 52. C&W alleges its employees worked at 3718 under NetApp's direction, presence, and supervision through written work orders and verbal instructions. ECF# 52, ¶¶ 12-13. During the operation of the NetApp agreement, NetApp sold 3718 to MWCB, and MWCB engaged Crossland Construction, Inc. ("Crossland") as its contractor for work to be done at 3718. *Id.* at ¶ 15. Around January 2020, NetApp verbally instructed C&W employees to assist the transition of 3718 from NetApp to MWCB and to perform work "at the direction of Crossland as NetApp vacated a portion of the facility." *Id.* at ¶ 16. At ¶ 19, C&W alleges:

> On information and belief, beginning in February or March 2020, and at the verbal direction of NetApp and Crossland, C&W Services' staff did certain work as instructed by NetApp and Crossland to help Crossland dismantle and remove electrical equipment, conduits, and/or wire from labs located at the facility. Among the work performed in accordance with the verbal direction of NetApp and Crossland, Crossland personnel directed C&W Services' staff to

> assist Crossland in clearing materials from Labs A and C at 3718 Rock Road. Crossland personnel also authorized the removal of that material from 3718 Rock Road for recycling.

*Id.* at ¶ 19.

Count one of C&W's third-party complaint asserts an implied indemnity claim against NetApp. Specifically, if MWCB's allegation of the wiring and electrical equipment being removed without its consent is true, then NetApp, "without C&W Services' knowledge tortiously directed C&W's Services' staff to remove materials and perform unauthorized work at the facility." *Id.* at ¶ 26. C&W also alleged that "NetApp's direction to perform such unauthorized work would be beyond the scope of the NetApp Agreement, would not arise from or relate to its provisions, and, if it occurred, occurred without C&W Services' knowledge." *Id.* at ¶ 26. Thus, if it is found liable on MWCB's claim of damages, C&W asserts it is entitled first to implied contractual indemnity from NetApp because NetApp's "tortious acts, omissions, and/or negligence in directing C&W" caused MWCB's damages. *Id.* at ¶ 28. C&W alternatively asserts that if it is found liable for MWCB's damages, then it's entitled to comparative implied indemnity with damages apportioned by the comparative fault of MWCB, C&W, NetApp, Crossland, and any others. *Id.* at ¶ 29.

On NetApp's first motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), (ECF# 58), the court did not decide its merits but denied it without prejudice as prematurely filed. ECF# 91, at 3-4. The court's order also denied Crossland's motion to dismiss which had raised arguments not unlike those advanced by NetApp's premature motion. ECF# 91. NetApp's renewed motion is identical to its original motion and does not include any discussion of this court's intervening order

3

that denied Crossland's motion and addressed many, if not all, of NetApp's arguments.

**RULE 12(c) STANDARDS**

"A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)," *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000), and the same standards govern motions under either rule, *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003). Looking only at the contents of the complaint, the court accepts as true "all well-pleaded factual allegations in a complaint and view[s] these allegations in the light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009), *cert. denied*, 558 U.S. 1148 (2010). To withstand such a motion, "a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Al-Owhali v. Holder*, 687 F.3d 1236, 1239 (10th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal citation and quotation marks omitted). "Thus, in ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

That they share governing standards does not mean that Rule 12(c) motions are the same as Rule 12(b) motions. A motion proceeding under Rule 12(c) occurs only after the pleadings are closed and "'is designed to provide a means of

disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court will take judicial notice.'" *Bushnell Corp. v. ITT Corp.*, 973 F. Supp. 1276, 1281 (D. Kan. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367, at 509-10 (2d ed. 1990)). "'A motion for judgment on the pleadings, however, theoretically is directed towards a determination of the substantive merits of the controversy; thus, courts are unwilling to grant a judgment under Rule 12(c) unless it is clear that the merits of the controversy can be fairly and fully decided in this summary manner.'" *Id*. at 1281-82 (quoting 5A Wright & Miller, § 1369, at 532-33).

**ANALYSIS**

NetApp chooses to refile its rambling motion without refining it in consideration of the court's prior order. Nor has NetApp filed any reply to C&W's response which does incorporate the court's prior order and its relevance to the very arguments advanced in NetApp's renewed motion. With due respect for Rule 1's concerns for a just, speedy and inexpensive determination, the court will address summarily the merits of NetApp's motion by reference to the court's prior ruling.

NetApp has failed to show at this juncture that C&W's third-party indemnity claims "are legally flawed" for any of the reasons argued. ECF# 99, p. 2. First, NetApp does not cite any legal authority requiring C&W at this juncture to allege with detail that there is "tort liability from NetApp to MWCB." *Id*. C&W's response and cited authorities show the flaw in NetApp's position. Moreover, the court in deciding Crossland's motion considered the leading Kansas case law and

5

applied the same in assessing the legal sufficiency of C&W's allegations in support of its third-party indemnity claims. C&W's third-party allegations against NetApp are identical to its allegations against Crossland. And this court denied Crossland's motion finding that:

> The court agrees with C&W that it has alleged a plausible implied contractual indemnity claim. C&W denies any fault for the damages done by its staff removing and selling the wiring and equipment because its staff was acting under the written and verbal directions of Crossland and NetApp and C&W relied on Crossland's and NetApp's apparent authority. C&W alleges a relationship with Crossland arising from its agreement and verbal understanding with NetApp to assist with the transition and to perform work under Crossland's direction. While C&W does not list by name Crossland's tortious acts, it is enough to allege facts indicative of tortious conduct. *See Philadelphia Indemnity Ins. Co. v. Midwest Steel Fab, LLC*, No. 19-1026-EFM, 2021 WL 2711152, at *5 (D. Kan. Jul. 1, 2021). C&W alleges that Crossland and its agents engaged in tortious or negligent acts or omissions "in directing C&W Services" staff in the alleged removal of writing and electrical equipment. ECF# 52, ¶ 36. There are sufficient facts alleged, as highlighted below, to create a reasonable expectation that discovery will reveal evidence of tortious activity as required for relief. The court also is satisfied with C&W's allegations denying any fault. The "information and belief" allegation prefacing ¶¶ 19 and 34 is not fatal to C&W pursuing this claim. There are supporting allegations here that C&W staff worked at 3718 under NetApp's direction, presence, and supervision through written work orders and verbal instructions. ECF# 52, ¶¶ 12 and 13. Around January 2020, NetApp verbally instructed C&W employees to assist the transition of 3718 from NetApp to MWCB and to perform work "at the direction of Crossland as NetApp vacated a portion of the facility." *Id*. at ¶ 16. In April, C&W staff completed two NetApp written work orders involving the removal of wiring and equipment at Labs A and C with some materials saved and other materials going to reclamation. *Id*. at ¶¶ 17-18. "At all times, the work performed by C&W Services' staff at 3718 Rock Road was conducted with NetApp's and Crossland's knowledge, authorization, and consent, in NetApp's and Crossland's presence, at NetApp's and Crossland's direction, and under NetApp's and Crossland's supervision." *Id*. at ¶ 32. "[A]t all times, C&W Services' staff reasonably believed that work was authorized by NetApp, Crossland, and the facility's owner, MWCB." *Id*. at ¶ 33. If adjudged liable to MWCB, C&W asserts it "is entitled to implied contractual indemnity from Crossland because Crossland and its agents' tortious acts, omissions, and/or negligence in directing C&W Services were the sole and/or proximate cause of MWCB's damages." ¶ 36. None of Crossland's arguments are persuasive in showing that these allegations fail to state a plausible claim for implied contractual indemnity.

ECF# 91, pp. 7-8. This ruling is on all fours and fully applies without any exception to what is argued in NetApp's renewed motion. C&W has alleged facts indicative of NetApp's tortious conduct in directing C&W's "staff to remove materials and to perform unauthorized work at the facility." ECF# 52, ¶¶ 26 and 28. It also has alleged that NetApp's tortious conduct was "the sole and/or proximate cause of MWCB's damages." *Id*. at ¶ 28. While NetApp may dispute C&W's allegations that its employees worked on MWCB's property at NetApp's direction, this is not a matter that can be resolved on a Rule 12(c) motion. The same can be said of NetApp's summary argument based on the agency disclaimer in NetApp agreement with C&W. The pleadings here reveal the material facts are in dispute, and the issues do not submit to a Rule 12(c) resolution.

C&W alternatively pleads that it is "entitled to comparative implied indemnity from NetApp and/or any damages awarded to MWCB should be apportioned between MWCB, C&W Services, NetApp, Crossland, and any others according to their relative degree of fault, if any." ECF# 52 at ¶ 29. NetApp argues that C&W has not alleged the elements of a negligence action against NetApp and that there is no basis for such a claim here. Again, the court addressed these same arguments from Crossland in its prior order. After discussing and quoting the governing Kansas law on this equitable remedy, the court held:

> Thus, in filing its comparative implied indemnity claim, C&W has preserved a timely claim for contribution and notified the defendants of their possible liability. Because of the singularity of the wrongful act and injury alleged here, that is, the removal of wiring and equipment, the plaintiff MWCB may be seeking to recover from only one party, but the facts as alleged now certainly submit to possible comparative fault. Indeed, the court cannot rule out the plausibility of liability here depending on the parties' respective negligence in

7

> communicating the scope of work to be done, in confirming their understanding of what work to be done, in supervising the execution of that work when done, and in reasonably performing all other related duties and expectations. And absent settlement, this matter would be readily addressed by a comparative fault determination at trial under the one-action rule. The court, therefore, denies Crossland's motion to dismiss C&W's comparative implied indemnity claim.

ECF# 91, p. 11. The same analysis and holding appears to govern NetApp's arguments. Having failed to address or distinguish the court's prior ruling on these same issues, the court summarily denies NetApp's renewed motion for judgment on the pleadings.

IT IS THEREFORE ORDERED that NetApp's renewed motion for judgment on the pleadings (ECF# 99) is denied.

Dated this 27th day of May, 2022, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge